UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

KENNETH COLVIN,

    Plaintiff,

v.                                                                                                        Case No. 2:12-cv-347
                                                                                                      HON. ROBERT HOLMES BELL
MICHAEL L. BROSTOSKI, D.O., et al.,

    Defendants.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Kenneth Colvin, a state prisoner confined at the Carson City Correctional Facility, alleges that while he was incarcerated at the Chippewa Correctional Facility (URF), Defendants Dr. Michael L. Brostoski and Nurse Theresa M. Merling denied him his prescribed pain medication for several days at a time for a serious injury to his finger. Plaintiff asserts that as a result, he suffered excruciating pain from February 12, 2012, until February 18, 2012, and from April 16, 2012, until April 21, 2012. Plaintiff seeks compensatory, punitive and nominal damages, as well as costs.

Plaintiff injured his finger while lifting weights on February 12, 2012, when he dropped a 55 pound weight on his finger. Plaintiff was taken to the emergency room for an x-ray and sutures. When plaintiff returned to the prison it was noted by nurse Belonga that the hospital physician prescribed Keflex and Norco. Nurse Belonga was told by the prison medical service provider to start plaintiff on Augmentin for seven days and provide plaintiff with Motrin. The records indicate that plaintiff was given twelve packets of Motrin and four tablets of Augmentin by

the nurse that day. Plaintiff was also issued instructions to ice, elevate, and told to keep the splint on. Plaintiff's sutures were to be removed in five days. Nurse Belonga ordered Augmentin for plaintiff to start on February 12, 2012, and to end on February 20, 2012.

The next day plaintiff was seen by defendants Dr. Brostoski and nurse Merling. Dr. Brostoski noted that plaintiff had already started taking Augmentin. The assessment was to ice, elevate and take Ibuprofen. Plaintiff was seen by nurse Merling on February 14, 2012. Epsom salt cups for daily finger soaks and daily dressing changes were ordered. Dr. Brostoski reviewed plaintiff's case to ensure that plaintiff was receiving "optimal available indicated care." As a result, to provide protection from Methicillin-resistant Staphylococcus aureus (MRSA), Augmentin was discontinued and plaintiff was given the antibiotic Clindamycin. Defendant Millette noted on February 15, 2012, that plaintiff's x-ray was reviewed and no further orders were required. Plaintiff was seen on February 16, 2012, and advised to continue daily checks and contact health care if pain, swelling, discoloration, infection, numbness or tingling increased. On February 17, 2012, defendant Merling noted that plaintiff was still waiting for the Motrin which was ordered. Plaintiff was seen on February 18, 19 and 20, 2012, for a wound check. On February 20, 2012, plaintiff complained that he did not receive pain killers. Plaintiff was informed and it was noted that he had received Motrin on February 18, 2012. Plaintiff was seen on February 21 and February 22, 2012. On February 22, 2012, Dr. Brostoski noted that plaintiff had completed his course of Clindamycin after the initial Betalactam treatment. Plaintiff's finger had been splinted and was covered when outside his cell. Plaintiff soaked his finger in Epsom salt and was now independently changing his own dressing in his cell. At that point, daily nursing visits were going to stop as plaintiff exhibited no systemic signs. The plan was to remove the sutures and continue the splint though mid-March,

continue Ibuprofen, continue dressing changes, and continue Epsom salt soaks. Plaintiff was instructed to contact health care if pain increased, or if he had any other concerns.

Plaintiff was seen on February 27, 2012. Plaintiff voiced no concerns at that time and plaintiff was advised to contact health care as needed. Plaintiff was seen on March 1, 2012, and had no complaints. Dr. Brostoski examined plaintiff on March 2, 2012. Plaintiff indicated that he was shoveling snow without problems. Plaintiff returned his splint during this visit. Plaintiff was seen again on March 4, 5, and 6, 2012. On March 7, 2012, plaintiff reported that "it is feeling fine, it hasn't been hurting that bad." Plaintiff did not show for his March 10 or 11, 2012, re-check. Plaintiff was seen on March 12 and 13, 2012. On March 15, 2012, plaintiff indicated that his finger was "doing alright." Plaintiff was seen on March 16, 2012, and there were no signs on of infection. On March 23, 2012, plaintiff reported a "fungal infection," that did not respond to over the counter medication. Plaintiff was seen on April 5, 2012. On that date, plaintiff's nail had fallen off. Plaintiff was seen on April 6, 2012. Dr. Brostoski examined plaintiff on April 9, 2012, and noted a 7mm mound where the nail plate was not growing. Dr. Brostoski indicated that he would reevaluate in one week and "with potential biopsy or extirpation-excision."

On April 12, 2012, plaintiff requested pain medication because Epsom salts were causing pain. A nurse indicated that plaintiff should follow his current treatment and a follow-up appointment with the doctor was scheduled. On April 16, 2012, Dr. Brostoski performed a procedure on plaintiff where his nail was removed and the nail bed was repaired. It was noted that plaintiff had complained of pain while soaking in Epsom salt. Dr. Brostoski attests that it would have been his normal practice to provide Ibuprofen after such a procedure if he provided pain medication, but he concedes that he never recorded that in the medical records. It is unclear, but it appears that Dr. Brostoski did not provide pain medication to plaintiff after this procedure. Plaintiff

was seen on April 17 and 18, 2012, without complaint. On April 19, 2012, Dr. Brostoski gave plaintiff Ibuprofen. Plaintiff stated that Ibuprofen "doesn't help." Dr. Brostoski prescribed Naproxen and instructed plaintiff to continue soaking his finger. On April 20, 2012, plaintiff indicated he was doing "good." On April 21, 2012, plaintiff indicated that it stung when he soaked in Epsom salts. By April 23, 2012, the nail was starting to grow back. Plaintiff had no swelling or infection.

Defendants move for summary judgment. Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Id.* at 324-25. The nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). The evidence must be viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Thus, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true. *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004) (*citing Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994)). However, a mere scintilla of evidence in support of the nonmovant's position will be insufficient. *Anderson*, 477 U.S. at 251-52. Ultimately, the court must determine whether there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252. *See also Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue of fact); *cf. Moore, Owen, Thomas & Co.*

*v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 102, 103-04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo County*, 390 F.3d 890, 899 (6th Cir. 2004). If, however the need involves "minor maladies or non-obvious complaints of a serious need for medical care," *Blackmore*, 390 F.3d at 898, the inmate must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment." *Napier v. Madison County*, 238 F.3d 739, 742 (6th Cir. 2001).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farmer*, 511 U.S. at 834). Deliberate indifference "entails something more than mere negligence," *Farmer,* 511 U.S. at 835, but can be "satisfied by something less than acts

or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* Under *Farmer*, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Estelle*, 429 U.S. at 105-06 (quotations omitted). Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Sanderfer v. Nichols*, 62 F.3d 151, 154-55 (6th Cir. 1995); *Ward v. Smith*, No. 95-6666, 1996 WL 627724, at *1 (6th Cir. Oct. 29, 1996). This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). Where, as here, "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.*; *see also Perez v. Oakland County*, 466

F.3d 416, 434 (6th Cir. 2006); *Kellerman v. Simpson*, 258 F. App'x 720, 727 (6th Cir. 2007); *McFarland v. Austin*, 196 F. App'x 410 (6th Cir. 2006); *Edmonds v. Horton*, 113 F. App'x 62, 65 (6th Cir. 2004); *Brock v. Crall*, 8 F. App'x 439, 440 (6th Cir. 2001); *Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998).

Plaintiff alleges that he was denied pain medication by defendants during two periods of time following his February 12, 2012, emergency room visit and after Dr. Brostoski removed the small mass from his nail bed on April 16, 2012. The failure to provide required medication and timely treatment could violate the Eighth Amendment. The Sixth Circuit recently addressed this issue in *Moore v. Cheatham, et al.*, No. 13-1299 (6th Cir. Jan. 13, 2014), where the prisoner plaintiff suffered from a hydrocele for a number of years and was treated mainly with an order for "scrotal support." On December 1, 2008, Moore was taken to an off-site emergency room and then another hospital with a painful and swollen testicle. A urologist noted that Moore had an immense hydrocele and ordered medication to treat his pain and fever. The urologist advised the prison that he could perform a hydrocele repair when Moore's fever was gone. Moore was then returned to the prison. Moore's medical records show that he was seen by a nurse on December 3, 2008, and again on December 8, 2008, and that he was given pain medication and antibiotics as ordered by the doctor. On December 10, 2008, Moore was seen by a doctor who found that his hydrocele was "larger than a grapefruit." Moore was then sent to the hospital, where the inpatient review report stated that Plaintiff's left hemi-scrotum was the size of a volleyball. On December 11, 2008, Moore underwent surgery to repair the hydrocele. In reversing the district court's grant of summary judgment, the Sixth Circuit noted that a testicle swollen to the size of a volleyball, or even a grapefruit, is obviously a condition requiring the attention of a physician. The Sixth Circuit stated:

> The defendants do not suggest that they were unaware of the doctor's orders or of Moore's pain and requests for health services. Given the severity of Moore's condition, a refusal to provide medication and timely treatment could lead a reasonable trier of fact to conclude that prison officials exposed Moore to "undue suffering or the threat of tangible residual injury." *Westlake v. Lucas*, 537 F.2d 857, 860 (6th Cir. 1976); *see also Scott v. Ambani*, 577 F.3d 642, 648 (6th Cir. 2009).

*Moore v. Cheatham*, No. 13-1299 (6th Cir. Jan. 13, 2014).

In this case, it is clear that plaintiff received very good medical care by the defendants. Plaintiff was treated initially on a daily basis until he was able to change his own dressing and soak his finger while inside his cell. Plaintiff was also seen frequently by defendants and other health care professionals at the prison. After Dr. Brostoski performed the minor procedure on plaintiff to remove the mass, plaintiff was again checked daily until his nail began to grow back. Plaintiff complains that he should have received more pain medication and better pain medication. However, the medical evidence shows that plaintiff received pain medication and at best may have inadvertently not received pain medication for only one day. Specifically, Dr. Brostoski provided plaintiff with pain medication whenever plaintiff asked him for medication and Dr. Brostoski accommodated plaintiff when plaintiff stated that Ibuprofen was not effective by ordering Naproxen for plaintiff. Moreover, plaintiff has not established that defendants knew that plaintiff was in pain and took no action. In fact, the medical evidence shows otherwise. Further, plaintiff was seen frequently after his initial injury in February through the month of April, and could have voiced his concerns to defendants and the other medical providers who examined him. The medical record shows that plaintiff was treated appropriately with not only pain medication when necessary, but frequent dressing changes, antibiotics, and Epsom salt soakings. In the opinion of the undersigned,

plaintiff cannot establish that defendants acted with deliberate indifference to a serious medical need necessary to support a claim under the Eighth Amendment.

Finally, to the extent that plaintiff is claiming his state law rights were violated, it is recommended that this court refuse to exercise pendent jurisdiction over such claims. Claims raising issues of state law are best left to determination by the state courts, particularly in the area of prison administration. In addition, pendent jurisdiction over state law claims cannot be exercised after all federal claims have been dismissed. *United Mine Workers v. Gibbs*, 383 U.S. 715, 726-727, 86 S. Ct. 1130, 1139 (1966); *Smith v. Freland*, 954 F.2d 343, 348 (6th Cir.), *cert. denied*, 504 U.S. 915, 112 S.Ct. 1954 (1992).

> That power need not be exercised in every case in which it is found to exist. It has consistently been recognized that pendent jurisdiction is a doctrine of discretion, not of plaintiff's right. Its justification lies in considerations of judicial economy, convenience and fairness to litigants; if these are not present a federal court should hesitate to exercise jurisdiction over state claims, even though bound to apply state law to them, *Erie R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L. Ed. 1188. Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law. Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well. Similarly, if it appears that the state issues substantially predominate, whether in terms of proof, of the scope of the issues raised, or of the comprehensiveness of the remedy sought, the state claims may be dismissed without prejudice and left for resolution to state tribunals.

*United Mine Workers*, 383 U.S. at 726-727 (1966).

In summary, in the opinion of the undersigned, plaintiff has failed to sustain his burden of proof in response to defendants' motions for summary judgment. Accordingly, it is recommended that Defendants' Motions for Summary Judgment (Docket #46 and #57) be granted and this case be dismissed in its entirety.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985).

       /s/ Timothy P. Greeley
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE

Dated: January 28, 2014